544IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CARLOS SOMUANO ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Civil Action No.3:11-42J |
| ) | |
| ) | Judge Kim R. Gibson/ |
| GEO GROUP, INC., ) | Magistrate Judge Cynthia Reed Eddy |
| CAMERON LINDSAY ) | |
| ) | |
| Defendants ) | |

## REPORT AND RECOMMENDATION

**I. RECOMMENDATION**

The Court considers here Defendants' Motion to Dismiss this action brought by Carlos Somuano ("Plaintiff" or "Somuano") pursuant to 42 U.S.C. § 1983, and invoking as well the parallel cause of action implied in Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971). Plaintiff acting pro se, contends that his due process and equal protection rights under the Fifth and Fourteenth Amendments were infringed when the rules of the private prison facility in which he is incarcerated were changed so that deposits to his inmate account can no longer be made via U.S. Postal Money Orders. [ECF No. 3]. The Court respectfully recommends that the Motion to Dismiss [ECF No. 15] be granted, with prejudice, in its entirety.

**II. REPORT**

**A. Background**

Somuano is a federal inmate at Moshannon Valley Correctional Center ("MVCC" or "the Center") in Phillipsburg, Pennsylvania. The Center is a private facility operated by Geo Group Corporation ("Geo") pursuant to a contract with the Federal Bureau of Prisons ("BOP").

According to Plaintiff, the Center primarily houses foreign born prisoners who will be deported after serving their sentences. The contract with the BOP provides that MVCC is obligated to adhere to BOP rules and regulations, treating its prisoners as though they were housed in a BOP prison facility. [ECF No. 3 at 2]. Somuano's Complaint is based on his assertion that BOP inmates are permitted to receive deposits to their institutional accounts "through any means they [choose], mostly through United States . . . Postal Money Orders," but also through Western Union or by personal check. [Id.]. For approximately three years following his transfer from a BOP facility to the Center, donors to Plaintiff's account were also allowed to make deposits via U.S. Postal Money Orders.

According to Plaintiff, beginning in August 2010, money orders were no longer accepted by MVCC as a valid means of deposit. Deposits could be made only by credit card or through websites requiring a credit card, both of which cost more than a money order, and were difficult for his family to obtain. Plaintiff does not allege that deposits to his account have ceased. Instead, he states: "Plaintiff's parents don't have credit cards and don't own or know how to use computers . . . Th[is] policy place[s] extreme[ ] hardship on the Plaintiff's family and affects [Plaintiff] greatly," violating his rights under the Fifth and Fourteenth Amendments. [Id. at 3, 6]. Plaintiff contends that Geo has a financial interest in the websites available to transfer money, and that prohibiting the use of money orders discriminates against the foreign deportable prisoners at MVCC.

Somuano does not request money damages, but rather seeks "injunctive relief to stop the Defendants from barring Plaintiff and the rest of the entire inmate population . . . from receiving United States Money Orders and Western Union." [Id. at 7]. [1]

**B. Standards Governing Dismissal of IFP Suits**

Because Plaintiff is a prisoner proceeding IFP, this Court is obligated under the Prisoner Litigation Reform Act ("PLRA) to dismiss claims that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who enjoys immunity from such relief. See 28 U.S.C. §1915(e)(2) (actions brought IFP); 28 U.S.C. § 1915(A) (actions seeking redress from governmental defendant); 42 U.S.C. § 1997e (prisoner suits complaining of conditions of confinement). Another feature of the PLRA is that a prisoner is precluded from bringing suit challenging conditions of confinement unless he has first exhausted available administrative remedies. See 28 U.S.C. 1997e(a). A court has inherent power to dismiss a complaint which, on its face, violates this bar to suit. See Ray v. Kertes, 285 F.3d 287, 293 n.5 (3d Cir. 2002).

The Defendants seek to dismiss Plaintiff's Complaint for failure to state a claim. Because the suit involves a pro se litigant, the Court is obliged to accept Plaintiff's allegations as true, drawing all reasonable inferences following therefrom in his favor. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). This does not excuse Plaintiff from including in his Complaint facts that demonstrate a plausible claim to relief – the same requirement applied to a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). See Powell v. Hoover, 956 F. Supp. 564, 568 (M.D. Pa. 1997) (applying Rule 12(b)(6) standard to claim dismissed under 28 U.S.C. §

---

[1] Three other prisoners at the Center have submitted a Motion to Joint [sic] as Plaintiffs in this litigation: "Plaintiffs are in the same predicament as Carlos Somuano [sic] and thus, respectfully urge the Court to add them as complianents [sic] in this Class Action suit." [ECF No. 7 at 1]. "[I]t is plain error to permit [an] imprisoned litigant . . . to represent his fellow inmates in a class action." Cullen v. Pa. Dept. of Corr., Civ. No. 09-1562, 2010 WL 5599542 at *2 (W.D. Pa. Aug. 11, 2010) (quoting Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir. 1975)).

1915(e)(2)(B)).

In Phillips v. County of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008), the United States Court of Appeals for the Third Circuit reiterated the Rule 12(b)(6) pleading requirements explained by the Supreme Court in Bell Atl. v. Twombly, 550 U.S. 544, 570 (2009) and Ashcroft v. Iqbal, 556 U.S. 662 (2009). See Phillips, 515 F.3d at 233–34. Motions to Dismiss are evaluated pursuant to a three-pronged approach. First, the Court must identify the elements essential to the plaintiff's cause of action. Second, the Court evaluates whether the complaint sets forth factual allegations as opposed to conclusory statements; the former it accepts as true, and the latter it disregards. See Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009). Third, if the complaint sets forth factual allegations, the Court must determine whether they support a claim to relief that is plausible on its face. See Twombly, 550 U.S. at 570.

The plausibility requirement is met when the plaintiff pleads facts that allow the court reasonably to infer that the defendant is liable for the misconduct alleged. Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir.2009). This standard does not impose a probability requirement at the pleading stage, but instead requires that the facts alleged be sufficient to raise a reasonable expectation that discovery will reveal evidence of the necessary elements of the claims made. See Iqbal, 129 S.Ct. at 1949; Phillips, 515 F.3d at 234.

**C. Discussion**

**1. The Applicability of 42 U.S.C. §1983**

In order to state a viable cause of action under section 1983,[2] a plaintiff must allege sufficient facts to establish two essential elements: (1) that the conduct complained of was

---

[2] 42 U.S.C. § 1983 provides a cause of action against any "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected" any person to the deprivation of any right protected by federal law or the United States Constitution.

4

committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States." Schneyder v. Smith, 653 F.3d 313, 319 (3d Cir. 2011) (citing Kost v. Kozakiewicz, 1 F.3d 176, 184 (3d Cir. 1993)).

Plaintiff's Complaint fails to support his assertion that Defendants acted under color of state law. "It is well established that liability under § 1983 will not attach for actions not taken under color of state law." Brown v. Philip Morris Inc., 250 F.3d 789, 800 (3d Cir. 2001) (citing Bethea v. Reid, 445 F.2d 1163, 1164 (3d Cir. 1971). See also Varma v. Fed. Bureau of Prisons, No. 10-2838, 2011 WL 1108659 at *2 (3d Cir. 2011) (same) (citing Groman v. Twp. of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995)); Bennett v. Bennett, Civ. No. 07-91J, 2008 WL 1969282 at * 1 (W.D. Pa. 2008) (action by federal prisoner must proceed pursuant to Bivens). The unavailability of section 1983 in the circumstances of this case was explained by the Court in Baez v. Cornell Co., Inc., Civ. No. 3:10-24, 2010 WL 5648572 at *2 (W.D. Pa. Dec. 23, 2010):

> All of Defendants' conduct alleged in Plaintiff's Complaint occurred while Plaintiff was a federal inmate in the custody of the United States, Federal Bureau of Prisons. While some of the alleged conduct might involve *federal* officials, [none] of the conduct could have been under color of *state* law. Thus, Plaintiff cannot state a claim under 42 U.S.C§ 1983.

Id. (emphasis in original) (internal citation omitted).

Because the first element of a viable section 1983 cannot be satisfied under the facts presented, or supplemented to pass muster, Somuano's 1983 claim should be dismissed with prejudice.

**2. Viability of a Bivens Action**

Plaintiff asks, in the alternative, that the Court construe his Complaint as one brought

5

pursuant to the Supreme Court's decision in Bivens, 403 U.S. at 388. In Bivens, "[the Supreme Court] recognized for the first time an implied private action for damages against *federal officers* alleged to have violated a citizen's constitutional rights." Corr. Serv. v. Malesko, 534 U.S. 61, 66 (2001) (emphasis added). Specifically, the Court "held that a victim of a Fourth Amendment violation by federal officers may bring suit against the officers in federal court." Id. A Bivens action "permits damage suits against federal employees mirroring those filed against state actors pursuant to 42 U.S.C. §1983." Bennett, 2008 WL 1969282 at *2.

The Supreme Court recently described Bivens's "core holding" as "recognizing in limited circumstances a claim for money damages against federal officers who abuse their constitutional authority." Malesko, 534 U.S. at 67. "In order to state a Bivens claim, a plaintiff must show that the defendants: (1) acted under color of federal law; and (2) caused the plaintiff to be deprived of a right secured by the constitution and laws of the United States." Brady v. Robinson, 77 F.3d 488 (9th Cir. 1996) (citing Van Strum v. Lawn, 940 F.2d 406, 409 (9th Cir. 1991)). "'[T]he purpose of Bivens is to deter the officer,' not the agency." Id. at 69 (quoting FDIC v. Myer, 510 U.S. 471, 474 (1994). "[N]o implied action exists under Bivens against private corporations housing federal prisoners under contract with the [BOP]." Baez, 2010 WL 5648572 at *3 (citing Malesko, 534 U.S. at 70-71).

Somuano's Bivens claim is deficient in several respects. First, the sole officer named in Plaintiff's Complaint is Cameron Lindsay ("Lindsay"), the MVCC Warden. There is nothing in the Complaint to suggest that Lindsay was involved in any way with the policy governing prisoner accounts. "A Bivens action . . . requires personal involvement in the underlying constitutional deprivation." Perez-Barron v. United States, Civ. No. 09-173, 2010 WL 3338766 at *3 (W.D. Pa. July 19, 2010) (citing Huberty v. U.S. Ambassador to Costa Rica, Civ. No. 07-

6

0330, 2008 WL 3864073 at * 1 (3d Cir. Aug. 21, 2008)).

To date, the United States Court of Appeals for the Third Circuit has not issued a precedential opinion addressing whether a Bivens action lies against a private company under contract to operate a federal prison, or whether a claim may be brought against an employee of that company. In Varma, 2011 WL 1108659 at *2, though, the Court noted the Magistrate Judge's conclusion that Bivens did not apply to claims made against private corporations operating facilities on behalf of the BOP or to actions against employees of a private prison. It also recognized that its sister Courts of Appeals considering this question have divided on the question. [3] The Court in Varma did not reach that issue, though, because it concluded, "[E]ven if [the] Bivens claims [were] cognizable, [they] were properly dismissed because [the plaintiff] failed to exhaust his administrative remedies." Id. at *2. Under the PLRA, prisoners are barred from litigating conditions of confinement claims until they have exhausted available administrative remedies. See 42 U.S.C. § 1997e(a).

The analysis of failure to exhaust administrative remedies adopted by the Court of Appeals in Varma applies with equal force here. Somuano's Complaint does not make any mention of available administrative remedies or his attempt to access them despite the fact that:

> [I]nmates in respondent's position . . . have full access to remedial mechanisms established by the BOP, including suits in federal court for injunctive relief and grievances filed through the BOP's Administrative Remedy Program (ARP). See 28 CFR § 542.10 (2001) (explaining ARP as providing "a process through which inmates may seek formal review of an issue which relates to any

---

[3] Compare Pollard v. The Geo Group, Inc., 607 F.3d 583, 588 (9th Cir. 2010)(holding claim cognizable), amended, 629 F.3d 843 (9th Cir. 2010), cert. granted sub nom Minneci v. Pollard, 131 S.Ct. 2449 (2011) with Alba v. Montford, 517 F.3d 1249, 1252–55 (11th Cir.2008) (holding claim is not cognizable); Holly v. Scott, 434 F.3d 287, 295–97 (4th Cir. 2006) (same). See also Peoples v. CCA Detention Ctrs., 449 F.3d 1097, 1099(10th Cir. 2006) (en banc) (evenly divided on issue).

aspect of their confinement"). [A]nd unlike the Bivens remedy, which we have never considered a proper vehicle for altering an entity's policy, injunctive relief has long been recognized as the proper means for preventing entities from acting unconstitutionally.

Malesko, 534 U.S. at 74.

**Failure to Establish Violation of a Constitutional Right**

Even if the Court were to assume, arguendo, that the first prong of the Bivens analysis has been satisfied, Somuano's claim still fails, because he has not established a violation of any constitutional right.

**a. Property Interest**

Although it is undisputed that a prisoner has a protected property interest in funds held in his inmate account, see Reynolds v. Wagner, 128 F.3d 166, 179 (3d Cir. 1997) (collecting cases), Somuano has not cited and the Court has not located authority for the proposition that this property interest extends to the method used to fund that account. The procedure followed by MVCC does not deprive Plaintiff of rights in his account. If anything, it limits the options open to depositors. That the procedure imposes higher costs on these depositors has, at most, an ancillary effect on Plaintiff since he is still receiving funds, and does not deprive him of a property interest in his prison account.

**Liberty Interest**

Somuano has also failed to establish a plausible liberty interest. "[A] prisoner holds a liberty interest triggering due process protection in two instances: when '[government] statutes and regulations create a liberty interest in freedom from restraint that imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life,' and when

8

'severe changes in conditions of confinement amount to a grievous loss that should not be imposed without the opportunity for notice and an adequate hearing.'" Evans v. Sec. Pa. Dept. of Corr., 645 F.3d 650, 663 (3d Cir. 2011).

Somuano has not alleged a deprivation of or cited authority supporting the existence of a liberty interest falling within either category. A change in the method of deposit to a prison account, has never been characterized as an atypical hardship implicating an inmate's liberty interest. "Examples of prison hardships that would qualify as so atypical and significant as to implicate due process considerations include unwanted administration of anti-psychotic drugs, involuntary commitment to a mental hospital or extension of the prisoner's sentence for his under underlying criminal conviction." English v. Albers, Civ. Act. No. 11-1602, 2011 WL 4853176 at * 5 (E.D. La. September 19, 2011) (quoting Sandin v. Connor, 515 U.S. 472, 484 (1995)).

No liberty interest was implicated in in these other cases where the facts are exponentially more compelling. The inability to use money orders to fund that account simply does not amount to an atypical or significant hardship or a grievous loss so as to implicate a liberty interest.

### b. Equal Protection

Somuano sets out his equal protection claim as follows:

> Plaintiff believes that the Defendants intentionally treated him and other prisoners at MVCC facility differently than other inmates who are similarly situated in BOP prison facililties because Plaintiff is a foreigner who is deportable and as such, the Defendants felt that Plaintiff and other inmates have no rights to be treated equal like other American born inmates who are housed in BOP facilities.

9

[ECF No. 3 at 5]. Courts considering similar claims have rejected them. In Boulware v. Fed. Bur. of Prisons, 518 F. Supp. 2d 186 (D.D.C. 2007), the Plaintiff contended that his equal protection rights were violated when prisoners in the facility in which he was incarcerated were denied vocational opportunities available to inmates in other BOP facilities. The Court wrote: "In order to make an equal protection claim, a plaintiff must either allege that the government intentionally discriminated against him as a member of a protected class, or treated him differently than another similarly situated individual or group." Id. at 189 (internal citations omitted). The Court then stated:

> "In determining whether [a prisoner] is being denied equal protection of the laws [,] the class to which he belongs consists of the persons confined as he was confined, subject to the same conditions to which he was subject." [The Plaintiff's] alleged comparison [of] D.C. prisoners [to] prisoners in BOP facilities nationwide is insufficient to state an equal protection claim.

Id. at 190 (internal citation omitted). For a similar statement of the law, see Brooks v. Andrews, No. 1:03-cv-06106, 2007 WL 111679 at *6 (E.D. Cal. January 10, 2007). (inmate housed at a private prison, was not similarly situated to inmates housed in federal prisons for the purpose of determining if the private prison's dental policy was discriminatory).

Even if the Court assumes, arguendo, that Plaintiff has satisfied the "similarly situated requirement," he is still required to show that the alleged difference in treatment was the result intentional or purposeful discrimination. Snowden v. Hughes, 321 U.S. 1, 8, (1944); Wilson v. Schillinger, 761 F.2d 921, 929 (3d Cir.1985); E & T Realty v. Strickland, 830 F.2d 1107, 1113-14 (11th Cir.1987). The bare-bones allegations in Plaintiff's Complaint are insufficient to sustain this aspect of an equal protection claim, and fail to "nudge [Plaintiff's] claims of invidious discrimination across the line from conceivable to plausible." See Iqbal, 127 S.Ct. at 1951 (internal quotation marks omitted).

10

## III. CONCLUSION

For the reasons set out above, it is recommended that the Motion to Dismiss filed by the Defendants [ECF No. 15] be granted in its entirety. Because the Court finds that amendment of the Complaint would be futile, it is further recommended that the dismissal be with prejudice. The Court further recommends that the Motion to [Join] as Plaintiffs [ECF No. 7] filed by other Center inmates be denied as moot.

In accordance with the Magistrate's Act, 28 U.S.C. § 636 (b)(1)(B) and (C), and Rule 72.D.2 of the Local Rules for Magistrates, objections to this Report and Recommendation must be filed by January 19, 2012. Failure to file timely objections will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

> Respectfully submitted,
>
> s/ Cynthia Reed Eddy
> Cynthia Reed Eddy
> United States Magistrate Judge

Dated: January 5, 2011

cc: Counsel of Record via CM-ECF

    Carlos Somuano
    69934-004
    Moshannon Valley Correctional Center
    A-3
    555 I Geo Drive
    Philipsburg, PA 16866